**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| In re: ) | |
| ) | |
| JENNIFER HARRIS, ) | Case No. 19-11934-BFK |
| ) | Chapter 13 |
| ) | |
| Debtor. ) | |
| _____) | |

**MEMORANDUM OPINION AND**
**ORDER SUSTAINING TRUSTEE'S OBJECTION**
**TO CONFIRMATION OF CHAPTER 13 PLAN**

This case presents the issue of whether the Debtor may deduct the sum of $1,463.00 for a monthly mortgage obligation for the support of her elderly mother-in-law under the Chapter 13 means test. For the reasons stated below, the Court holds that the deduction is not allowable under the means test. The Court, therefore, will sustain the Chapter 13 Trustee's Objection to confirmation of the Debtor's Plan.

**Findings of Fact**

The Court, having heard the evidence, makes the following findings of fact.

*A.  The D.C. Property.*

1. The Debtor is an individual residing in Lorton, Virginia, with her husband and two daughters. The Debtor's husband is not a debtor in this bankruptcy case.

2. The Debtor is employed as a Senior Professor with DeVry University. Her gross monthly income is $13,533.20. Docket No. 31-1, Schedule I, Line 2. Her husband works as a package handler for Amazon, a job that he only recently started. He earns gross monthly income of $1,032.00. *Id.*

1

3. The Debtor is above the median for Virginia debtors for purposes of the means test.

4. The Debtor's mother-in-law, Hessie Harris, lives at 3414 Nash Place S.E., in Washington, D.C. (the "D.C. Property"). She has resided there since 1964, and is 87 years old.[1]

5. In 2007 or 2008, the Debtor transferred title to the D.C. Property into her name and Ms. Harris's name jointly so that the Debtor could use her income to obtain a mortgage loan to pay for Ms. Harris's medical bills. This effort was successful; the Debtor obtained a loan for $190,000, secured by the D.C. Property. The Debtor paid certain medical bills for Ms. Harris and the Debtor and her husband received $5,000 to $10,000 out of the loan proceeds.

6. In 2012, the Debtor caused title to the D.C. Property to revert to Ms. Harris. The Debtor, therefore, remains liable on the mortgage loan but does not own the D.C. Property.

7. The monthly payment for the loan secured by the D.C. Property is in the amount of $1,463.00.

8. Ms. Harris receives a small disability check per month, but otherwise has no income. The Debtor described her condition as "frail."

9. The Debtor testified that her residence in Lorton, Virginia, is unsuitable for her mother-in-law because the home in Lorton has two stories and Ms. Harris cannot manage the stairs every day.

10. The Debtor's husband has two siblings, a brother and a sister, who are a retired attorney and a retired filmmaker, respectively. They do not contribute to the payment of the mortgage on the D.C. Property.

---

[1] The Court uses the term "the Debtor" to refer to Jennifer Harris, the Debtor in this bankruptcy case. The Court uses the term "Ms. Harris" to refer to Hessie Harris, the Debtor's mother-in-law.

11. The Debtor and her husband do not claim Ms. Harris as a dependent on their federal and State tax returns.

B. *The Debtor's Chapter 13 Plan.*

12. The Debtor filed a Voluntary Petition under Chapter 13 with this Court on June 11, 2019.

13. In her means test form (Form 122C-2) the Debtor takes a deduction for "other secured debts" (that is, other than her principal residence) in the amount of $1,463.00, for the payment of the D.C. mortgage. Docket No. 1, p. 53, Line 33d.

14. After taking this deduction, the Debtor calculates that her disposable income for purposes of the means test is in the amount of $231.58 per month. *Id.*, p. 55, Line 45.

15. The Debtor filed an Amended Chapter 13 Plan on September 5, 2019. Docket No. 31. The Debtor's Plan proposes that she will pay $607.00 per month for 60 months, for a total of $36,420.00, and a distribution to her unsecured creditors of 8.8%. *Id.*, ¶¶ 2, 5.

16. The Debtor's Amended Plan states that she will "surrender" the D.C. Property. *Id.*, ¶ 4(B).

17. Schedule J, attached to the Debtor's Amended Plan, states an expense in the amount of $1,463.00 for "Support" for the Debtor's mother-in-law. *Id.*, Schedule J, Line 19.

18. The Chapter 13 Trustee objected to the Debtor's Amended Plan on the ground that she is not devoting all of her disposable income to the Plan, owing to the deduction taken for the D.C. property. Docket No. 32.

**Conclusions of Law**

This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) (confirmations of plans).

The parties and the Court agree on what this case is not about. First, the Debtor does not claim that the monthly mortgage payments on the D.C. Property come within the "special circumstances" of Bankruptcy Code Section 707(b)(2)(B). *See In re Burdett*, No. 12-12066-BFK, 2013 WL 865575, at *4 (Bankr. E.D. Va. Mar. 7, 2013) (examples of special circumstances set out in Section 707(b)(2)(B) "signal an intent that the circumstances be of a more severe nature than ordinary job changes or income fluctuations"). Second, the Debtor's use of the term "surrender" for the D.C. Property in her Amended Plan is mistaken, in that she does not own the D.C. Property, and the listing of the $1,463.00 monthly mortgage payment on line 33d of the means test ("other secured debts") is incorrect because the mortgage on the D.C. property is not secured by any property owned by the Debtor. The dispute, therefore, centers on whether the D.C. mortgage payment should be listed on line 26 of the means test, as an actual monthly expense for the "reasonable and necessary support of an elderly . . . member of [the Debtor's] household or member of [the Debtor's] immediate family who is unable to pay for such expenses." 11 U.S.C. § 707(b)(2)(A)(ii)(II) (2018).

The means test was enacted as a central feature of the BAPCPA Amendments to the Bankruptcy Code in October 2015. The means test, which is applicable to above-median debtors in Chapter 13, was designed "to help ensure that debtors who can pay creditors do pay them." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 64 (2011) (citing H.R. Rep. No. 109–31, pt. 1, at 2 (2005)).

4

Line 26 of the means test is derived from Section 707(b)(2)(A)(ii)(II), which allows an additional deduction as follows:

> In addition, the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled *household member or member of the debtor's immediate family* (*including* parents, grandparents, siblings, children, and grandchildren of the debtor, the *dependents of the debtor*, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses. Such monthly expenses may include, if applicable, contributions to an account of a qualified ABLE program to the extent such contributions are not excess contributions (as described in section 4973(h) of the Internal Revenue Code of 1986) and if the designated beneficiary of such account is a child, stepchild, grandchild, or stepgrandchild of the debtor.

11 U.S.C. § 707(b)(2)(A)(ii)(II) (emphasis added).

The phrase "elderly, chronically ill, or disabled" has been held to modify both "household member" and "member of the debtor's immediate family," so that a member of the debtor's immediate family who is not a member of the debtor's household must be elderly, chronically ill or disabled, to qualify for the deduction. *In re Linville*, 446 B.R. 522, 527-28 (Bankr. D. N.M. 2011); *In re Williams*, 424 B.R. 207, 214-15 (Bankr. W.D. Va. 2010); *In re Harris*, 415 B.R. 756, 761-62 (Bankr. E.D. Cal. 2009); *In re Hicks*, 370 B.R. 919, 922 (Bankr. E.D. Mo. 2007).

There is no question that Ms. Harris, at 87 years old, is elderly. The Court further finds the $1,463.00 monthly expense to be reasonable and necessary. The Debtor testified without contradiction that Ms. Harris has resided in the D.C. Property for over 50 years, and because the Debtor's residence in Lorton is two stories, it would represent a hardship for Ms. Harris to move into the Lorton property. The issue comes down to whether Ms. Harris is either a member of the Debtor's household or is a member of the Debtor's immediate family.

5

> A. *Ms. Harris is Not a Member of the Debtor's Household.*

The Court first addresses whether Ms. Harris is a member of the Debtor's household. In *Johnson v. Zimmer*, 686 F.3d 224 (4th Cir. 2012), the Fourth Circuit rejected the "heads on beds" approach for purposes of defining the debtor's household size, adopting instead the economic unit approach. In doing so, the Fourth Circuit noted: "There may be situations in which a bankruptcy court determines it is appropriate to include within a debtor's 'household' an individual who does not live with the debtor, but is part of the debtor's reasonably necessary expenses, such as a dependent relative in a nursing home or assisted medical care facility." *Johnson*, 686 F.3d at 236 n.10. Section § 707(b)(2)(A)(ii)(II), though, does not use the term "relative;" it employs the term "household member or member of the debtor's immediate family." The issue addressed in this Opinion, therefore, is not answered by footnote 10 in *Johnson*.[2]

In *In re Versace*, No. 16-05593, 2017 WL 1501386 (Bankr. D.S.C. Apr. 26, 2017), the court rejected the idea that the debtors' father, who lived separately from her, was a member of the debtor's household. The Court noted:

> Unlike the facts here, in *Johnson* and most cases utilizing the "economic unit" approach to determine household size, the interdependence discussions involved family members that either: (1) live within the same residence as the debtor, but only part-time; or (2) live with the debtor, but may not be members of the debtor's traditional family. *See e.g., id.* at 226, 239; *In re Ford*, 509 B.R. 695, 697, 700 (Bankr. D. Idaho 2014) (involving a former stepson that stayed with the debtor at least once a week); *In re Herbert*, 405 B.R. 165, 169–71 (Bankr. W.D.N.C. 2008) (involving the debtor's biological child with his girlfriend and his girlfriend's eight children from a prior relationship, with whom the debtor lived with). Although the Fourth Circuit mentioned that in some cases a bankruptcy court must exercise its discretion to accommodate the reality of a debtor's

---

[2] Had Section 707(b)(2)(A)(ii)(II) made use of the term "relative," the deduction here would be allowed, since Ms. Harris is a relative of the Debtor by affinity. *See* 11 U.S.C. § 101(45) (the term "relative" means one related "by affinity or consanguinity within the third degree as determined by the common law"); *In re Wandrie*, 563 B.R. 238,253 n.58 (Bankr. E.D. Mich. 2017) (father-in-law and mother-in-law were insiders because they were relatives by affinity); *In re Am. Housing Found.*, No. 09-20232-RLJ-11, 2011 WL 4625338 (Bankr. N.D. Tex. 2011) (son-in-law is a relative by affinity); *In re Gamaldi*, 2009 WL 961417 (Bankr. E.D.N.Y. 2009) (stepmother-in-law was a relative); *In re Winn*, 127 B.R. 697 (Bankr. N.D. Fla. 1991) (father-in-law is a relative by affinity).

situation, nothing in the *Johnson* decision indicates that such discretion is boundless. Versace asks the Court—at the expense of her creditors—to expand her household size to include individuals that do not live with her at all, and who she has no legal obligation to support.

*Id.*, at *5.

The Court agrees – *Johnson* cannot be read to include persons who do not reside with the Debtor as members of the Debtor's household. Further, assuming that *Johnson* contemplates the definition of household to include individuals not living with the Debtor, as in *Versace*, there was no evidence presented in this case that the Debtor's finances are intermingled with those of Ms. Harris, other than the payment of the mortgage. There was no evidence, for example, that the parties share a bank account, nor was there evidence that the Debtor pays for food or utilities for Ms. Harris on a regular basis. Conversely, there was no evidence that Ms. Harris is contributing any portion of her Social Security benefits to the maintenance of the Debtor's household. Ms. Harris, therefore, is not a member of the Debtor's household.

      B.      *Ms. Harris Is Not a Member of the Debtor's Immediate Family.*

The question, then, is whether Ms. Harris, as the Debtor's mother-in-law, comes within the statutory phrase "member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent)." 11 U.S.C. § 707(b)(2)(A)(ii)(II). If so, the deduction is proper; if not, the deduction cannot be allowed. The term immediate family is not defined in the Bankruptcy Code, but the Code does state that the term "including" is not limiting. *Id*. § 102(3). All of the terms within the parentheses, therefore, are non-limiting examples of the term "member of the debtor's immediate family."

Ms. Harris could accurately be described as a "dependent of the debtor," but she still would have to be a member of the Debtor's household (which she is not) or a member of the

7

Debtor's immediate family to qualify. Ms. Harris is obviously a member of the Debtor's husband's immediate family, but the Debtor's husband is not a debtor in this case.

The case law to date has been sparse, and not particularly helpful on the facts presented here. In *In re Glenn*, 345 B.R. 831, 834 (Bankr. N.D. Ohio 2006), the bankruptcy court disallowed the debtors' expenditure of $1,146.06 per month for the husband's mother's mortgage payments, which was an unsecured debt as to the debtors (as in this case). The court found that the expenditure was not "reasonably necessary" under Section 707(b). *Id.* at 837-38. The case is somewhat distinguishable from this case, however, because in *Glenn* the object of the debtors' generosity was one of the joint debtors' mother, and therefore, the issue of whether the debtor's mother qualified as a member of the debtors' immediate family was not decided.

In *In re Clingman*, 400 B.R. 555 (Bankr. S.D. Tex. 2009), the bankruptcy court reached a different conclusion. In *Clingman* (again, a joint debtor case), the debtor's parents transferred the property to the debtors pre-petition and the debtors took out a home equity loan against the property in which the debtor's parents still resided (and the debtors did not). The court allowed the deduction of $613.44 per month for the mortgage and the taxes, finding that the payment was a "statutorily-authorized expense that coincidentally improves [the debtors'] chance at a fresh start." *Id.* at 558. Again, the case is distinguishable because: (a) the property was property of the bankruptcy estate; (b) the loan was secured debt, not unsecured debt, as to the debtors; and (c) the parents were immediate family of one of the debtors.

The case of *In re Benincasa*, No. 09-07869-JW, 2010 WL 4638758 (Bankr. D.S.C. 2010), is probably the closest to this case on the facts. In *Benincasa*, the bankruptcy court disallowed an expense of $1,742.00 for the support of the debtor's mother. *Id.* at *5. The court ruled that (unlike here) the debtors "presented no evidence to show that the Debtor's Mother

8

could not live in their home," and that, therefore, the Debtors failed to meet their burden to show that the support was reasonably necessary. *Id*., at \*4. Again, though, the proposed support was for one of the joint debtors' mother, not for the support of a member of the non-debtor's immediate family.

Is Ms. Harris a member of the Debtor's immediate family? The Court finds that she is not. Although the issue is not free from doubt, the Court finds that Congress's use of the term "immediate family," rather than the more expansive term "relative," indicates an intent to circumscribe the use of the deduction under Section 707(b)(2)(A)(ii)(II). Moreover, the Court must read the statute in light of its intended purpose. As the Supreme Court held in *Ransom*:

> Congress designed the means test to measure debtors' disposable income and, in that way, "to ensure that [they] repay creditors the maximum they can afford." H.R. Rep., at 2. This purpose is best achieved by interpreting the means test, consistent with the statutory text, to reflect a debtor's ability to afford repayment.

562 U.S. at 71.

The Court finds that Congress did not intend the definition of "immediate family" in Section 707(b)(2)(A)(ii)(II) to be so expansive as to include the Debtor's mother-in-law, who is not a member of the Debtor's household. The Court, therefore, will sustain the Chapter 13 Trustee's Objection to the Debtor's Amended Chapter 13 Plan.

## Conclusion

It is therefore **ORDERED**:

1.     The Trustee's Objection to confirmation of the Debtor's Amended Chapter 13 Plan is sustained. The Debtor is allowed 21 days from the entry of this Order to file an Amended Plan.

2.     The Clerk will mail copies of this Memorandum Opinion and Order, or will provide cm-ecf notice of its entry, to the parties below.

Date: Nov 21 2019  /s/ Brian F. Kenney

Brian F. Kenney
Alexandria, Virginia  United States Bankruptcy Judge

Entered on Docket: November 22, 2019

<u>Copies to</u>:
Jennifer Harris
6835 Silver Ann Drive
Lorton, VA 22079
*Chapter 13 Debtor*

Richard G. Hall
7369 McWhorter Place
Suite 412
Annandale, VA 22003
*Counsel for the Debtor*

Thomas P. Gorman
300 N. Washington St. Ste. 400
Alexandria, VA 22314
*Chapter 13 Trustee*